DES MOINES GAS COMPANY, Appellee, v. CHAS. E. SAVERUDE et al., Appellants.

TAXATION:   Reduction by State Board—Effect on Appeal Order.  A valuation of property for taxation purposes, evidenced by a stipulated order in the district court on appeal from the action of the local board of review, is, in effect, a final adjudication as to the value which the assessor ought to have placed on the property, and such adjudged value is, in the absence of an agreement to the contrary, subject to whatever reduction may be ordered by the state board of review, even though the action of the state board was long prior to the entry of the stipulation in the district court. (Sec. 1373, Code Supp., 1913; Sec. 1379, Code, 1897.)

*Appeal from Polk District Court.*—THOS. J. GUTHRIE, Judge.

DECEMBER 14, 1920.

PLAINTIFF brought action asking for a writ of mandamus against defendants as the board of supervisors, to require the board to issue directions to the treasurer of Polk County to refund to plaintiff the sum of $6,457.57, and for judgment for costs. The relief asked was granted by the district court, and the defendants appeal.—*Affirmed.*

*George F. Henry,* for appellants.

*Carr, Carr & Cox,* for appellee.

PRESTON, J.—Plaintiff's plant is situated on 15 lots, and was assessed as town lots. The property was assessed by the as-

sessor, as of January 1, 1917, at $3,350,000, and such valuation was duly entered upon the assessment roll. Plaintiff made objection, before the board of review, and asked said board to reduce the assessment to $2,500,000, which was refused; but the board of review reduced the assessment to $2,850,000. Thereafter, and on May 8, 1917, plaintiff appealed to the district court. It appears that the case was not reached for trial for a year or more. Before the determination of the appeal, while it was still pending, and in August, 1917, the county auditor reduced this assessment 9 per cent, in accordance with the action of the state board of equalization, reducing town lot assessments. This reduction made the amount of the assessed valuation of the property $2,593,500. Thereafter, the appeal to the district court came on for trial; and, under a written stipulation, dated September 23, 1918, the assessed valuation was fixed at $2,500,000. This was on September 24, 1918. The decree entered under the stipulation reads, in part, that the court "finds, under and in accordance with the stipulation of the parties on file herein, that the value of the property of the Des Moines Gas Company, specifically described in the notice of appeal, is hereby fixed at the sum of $2,500,000;" and that the assessment against the company should be reduced from the sum fixed by the assessor and by the board of review, to the sum of $2,500,000. Appellee's claim is that the assessment, as finally fixed on the appeal, is the actual assessed valuation of the property as of January 1, 1917, and that the 9 per cent reduction should have been figured on that basis, rather than upon the basis figured by the county auditor. It asks a refund of the difference. The stipulation upon which the valuation was fixed on the appeal is signed by Carr, Carr & Evans, attorneys for plaintiff, and H. W. Byers and others, attorneys for the defendant. After describing the property, and reciting the proceedings we have before set out, it stipulates that:

"For the purposes of this case only, it is agreed that the value of said property was the sum of $2,500,000, and that the assessment of said property should be reduced from the amount as fixed by the board of review, to the sum of $2,500,000, and that an order be entered by this court reducing said assessment to said sum of $2,500,000.

"It is expressly understood and agreed that neither party shall be estopped, affected, or prejudiced by this agreement or by any finding, judgment, or decree of this court made in accordance herewith, in any other proceeding in this or any other court, or in any other matter or thing whatsoever, and that it shall have no effect except to determine the issues herein, and fix the amount at which said property is assessed.

"It is further stipulated and agreed that no penalties heretofore incurred for failure to pay the tax upon said property shall be assessed or collected, but this agreement shall not apply to penalties, if any, hereafter incurred."

Such was the stipulation as signed. As originally prepared, it contained the following:

"And the valuation hereby fixed shall be subject to the action of the state board of equalization, in equalizing the taxes between the several counties."

Before it was signed, these words were struck out, by drawing a pen through them. Appellant contends that there was an agreement between the attorneys that the final valuation was not to be subject to the action of the state board of equalization, and that the fact that the words above referred to were struck out, and the stipulation signed in the form in which it was signed, together with the testimony of Mr. Byers, establishes such an agreement. Judge Carr, who had charge of the matter for plaintiff, is dead, and the recollection of Byers is not clear as to the transaction of striking out the words referred to, and signing the stipulation. He thinks that the erasure was made to meet his understanding of the arrangement with Judge Carr. It is quite clear, however, from the conduct of Judge Carr, following the signing of the stipulation, that such was not Judge Carr's understanding of it. One of the circumstances which so shows, is that he at once presented the matter to the auditor for a reduction of 9 per cent on the $2,500,000. All the negotiations between Mr. Byers and Judge Carr were prior to the signing of the stipulation. Appellee contends that all such were merged in the writing. Mr. Byers testifies, in part:

"Q. When did this conversation occur, General, in which you claim that Judge Carr agreed that the amount found was not to be affected by the action of the state board of equaliza-

tion? A. I haven't said that Judge Carr agreed to anything. The conversation I had with the judge was before the stipulation was signed. * * * Q. So what you are testifying to, as I understand you, is some understanding you obtained from a conversation with somebody; but you are not able now to tell who it was, nor are you able to fix the date with reference to the time of signing the stipulation, that the amount of $2,500,000 was not to be subject to the action of the state board of equalization? A. I am not. I would not attempt to do it. The girl out of your office may have brought that stipulation to me, and I may have taken a pen and erased that without talking to anybody. I only know in a general way what my arrangement was about it, and that I am trying to tell you. Q. You do not testify there was any agreement made that the assessment valuation should not be subject to reduction, at the time the stipulation was signed, do you? A. No, sir, I testified to just what I said.''

He says further that he has no distinct recollection about it at all, as to where or when the conversation was, before the stipulation was signed, or whether it was with Judge Carr or with one of his partners. The inference, if any, to be drawn from the striking out of the words before referred to, in so far as it is claimed to establish an agreement, would, at most, be of a negative character. It appears to us that the circumstance is of little consequence. Mr. Byers does not claim that there was any such an agreement as appellant now contends. We are of opinion that such an agreement is not shown. This being so, the case turns upon the stipulation as signed, and the judgment entered pursuant thereto.

It seems to us that the confusion arises from the fact that the hearing of the appeal from the board of review to the district court was delayed a year or more. Had the trial in the district court taken place any time after May 18, 1917 (when the appeal was taken), and the assessment been fixed at $2,500,000, and before the action of the state board of equalization, or the action of the county auditor in August, there could be no question but that the 9 per cent reduction would be figured on the $2,500,000 valuation. Furthermore, appellant's contention that the 9 per cent reduction should be figured on the

assessment of $2,850,000 leaves the amount of the assessed valuation of the property at $2,593,500, or $93,500 more than the parties had stipulated that the assessment should be. This is the way appellant states it, and the way the record shows. Appellant concedes, in reply, that the assessment books were changed, to show the assessment against the company at $2,593,500. This is the amount arrived at after deducting 9 per cent from the amount fixed by the board of review. It seems quite clear that the parties did not contemplate that the assessed valuation of this property should be placed at $2,593,500, when they had stipulated in writing that it should be $2,500,000, and the judgment of the court fixed it at that amount. The only question before any of these tribunals was as to the proper valuation of this property. That was the question in the first instance before the assessor, at the time the assessment was made, which, we understand, was to have been as of January 1, 1917. At any rate, the time of such assessment was necessarily prior to April 1, 1917. The sole question in the district court was the fair valuation of the property at the time of the original assessment. It may be true that, under some circumstances, and for some purposes, the amount fixed by the board of review would be presumed to be correct until reversed on appeal. But the case was pending on appeal, and liable to be reduced, and it was so reduced on final hearing. Necessarily, the valuation of the property could not be determined until the appeal was disposed of, and when that was done, and the valuation finally fixed, such valuation could only be the valuation which should have been placed upon the property by the assessor in the first instance. In short, the valuation, as finally fixed, would relate back to the time of the original assessment. Had the case been tried in the district court, instead of being disposed of under the stipulation, the court would simply have found the value of the property, without taking into consideration any reduction ordered by the state board. As said, the question was the value of the property; and when that was fixed, the 9 per cent reduction ordered by the state board would be deducted. We have held that, on appeal to the district court, it is the duty of the court to do that which it was claimed the board failed to do: that is, make a just and equitable assessment. On appeal, the

court becomes the assessing tribunal, which is clothed with authority to determine anew the sum in which the taxpayer is to be assessed. By the appeal, the assessment by the board of review is superseded, and the assessment again made by the court. *Lyons v. Board of Equalization,* 102 Iowa 1; *Davis v. City of Clinton,* 55 Iowa 549; *Grimes v. City of Burlington,* 74 Iowa 123, 126. See, also, *In re Assessment Sioux City Stock Yards Co.,* 149 Iowa 5, 11. The duty of the state board of equalization is to adjust the value of property of the several kinds, adding to or deducting from the valuation of each kind or claim such percentage, in each case, as will bring the same to its reasonable value. Its function is to equalize the value of property between the several counties, not to review the action of the assessor or of the local board of review, or of the district court on appeal. It does not appear that the action of the state board was before the assessor or the local board of review. We think that neither the parties in the stipulation nor the trial court considered or attempted to do more than the court could have done, under the law: that is, fix the valuation. The stipulation provides that, for the purposes of this case only, it is agreed that the value of the property *was* $2,500,000 (not *is,* at the time of the trial or stipulation), indicating that it was the intention to fix the valuation of the property at the amount at which it should have been originally assessed. As said, that was the question all the way through. The company paid the tax under protest, and no question is raised as to the right to recover, if the record is construed as contended by appellee. We reach the conclusion that the decree of the trial court should be, and it is,—*Affirmed.*

LADD, SALINGER, and STEVENS, JJ., concur.